United States District Court
for the
Southern District of Florida

Julian Depot Miami, LLC, Plaintiff,  )
                                      )
v.                                    )
                                      ) Civil Action No. 17-22475-Civ-Scola
                                      )
Home Depot U.S.A., Inc.,              )
Defendant.                            )

**<u>Order Granting in Part and Denying in Part Motion to Dismiss</u>**

Julian Depot Miami, LLC's allegations center on Home Depot U.S.A., Inc.'s failure, as Julian Depot's tenant, to rebuild its home-improvement store after it was damaged by a fire. Alleging that Home Depot is required by the parties' lease to reconstruct its building, which has been completely razed, Julian Depot seeks both declaratory relief and damages for Home Depot's alleged breach of the lease. Home Depot, on the other hand, argues that both counts should be dismissed. According to Home Depot, (1) the Court lacks subject matter jurisdiction because the controversy between the parties is not yet ripe; and (2) both counts should be dismissed for failing to state a claim. After careful review, the Court finds Home Depot's argument regarding the breach of contract claim well taken but disagrees with Home Depot as to the declaratory judgment count. The Court thus **grants in part and denies in part** Home Depot's motion to dismiss (**ECF No. 13**) as more fully explained below.

1. **Factual Background and the Complaint**

Home Depot, in December 2006, entered into a twenty-year land lease with Julian Depot's predecessor-in-interest, Tallahassee LLC. (Compl. ¶¶ 5, 11, ECF No. 1-2, 3.) In addition to its initial twenty-year term, expiring in 2026, the lease also provides for four five-year renewal options. (*Id.* at ¶ 11.) The lease with Home Depot was part of Tallahassee LLC's bigger-picture plan to develop the Home Depot parcel, and several adjacent parcels, into a shopping center in Homestead, Florida with Home Depot as a potential anchor tenant. (*Id.* at ¶ 10.) According to Julian Depot, Home Depot had the option of constructing a retail building on the leased, but then as-yet-undeveloped, land but was not, at least initially, *required* to do so. (*Id.* at ¶ 15.) Instead, the terms of the lease simply encouraged Home Depot to construct the retail building by subjecting it to increased rents, in the form of penalties, should Home Depot opt not to do so. (*Id.* at ¶ 28.) In any event, Home Depot chose to build a store on the parcel. (*Id.* at ¶ 18.) Construction was completed in March 2008 and Home Depot thereafter began operating the new store. (*Id.* at ¶¶ 18, 29.)

Some four years later, in December 2012, Julian Depot took title to the land from Tallahassee LLC and assumed the lease. (*Id.* at ¶ 30.) Less than a year after that, in November 2013, a fire damaged the store. (*Id.* at 31.) According to the complaint, although the fire was severe enough to force Home Depot to close the store for repairs, the integrity of the structure itself had not been irreparably compromised. (*Id.* at 34.) Nonetheless, a month after the fire, Miami-Dade County's Regulatory and Economic Resources Department issued a violation, deeming the premises to be unsafe and ordering that the building either be repaired or demolished. (*Id.* at ¶¶ 40–41.) Home Depot then applied for a demolition permit, which was issued on February 11, 2014. (*Id.* at ¶ 43.) Julian Depot claims it did not become aware that the building had been razed until July 2014 and then began discussions with Home Depot regarding reconstructing the demolished improvements. (*Id.* at ¶¶ 46–47.)

Julian Depot's complaint centers on Home Depot's alleged refusal to rebuild its home-improvement store following the post-fire demolition and includes two counts: one seeking a declaratory judgment and the other for breach of contract. In asking for a declaratory judgment, Julian Depot submits that it is uncertain regarding its rights and obligations under two sections of its lease with Home Depot. According to Julian Depot, these two sections, 8.9(a)(i) and 10.1, require Home Depot to reconstruct any improvements that have been razed. Julian Depot also submits that if Home Depot has not completed construction of the replacement improvements by 180 days prior to the end of the twenty-year term, the lease will automatically extend and Home Depot must continue to pay 115% of the annual base rent until construction is completed. As reported in the complaint, however, Home Depot contends that another provision of the lease, section 7.3, releases it from any obligation set forth under either 8.9 or 10.1 to construct any improvements on the leased parcel. Julian Depot also alleges that Home Depot's position is that the lease does not require it to remain in possession of the land or to pay rent while the lot is vacant once the initial twenty-year term expires. Ultimately, Julian Depot asks the Court to, first, declare that Home Depot is required, under the lease, to reconstruct any improvements, of equal or greater value, upon their demolition. And, second, Julian Depot requests that the Court declare that the lease requires Home Depot to remain in possession and to continue its rent payments through the conclusion of all four five-year renewal terms, and beyond, upon the expiration of the initial term should Home Depot opt not to reconstruct the improvements.

In its breach-of-contract claim, Julian Depot alleges that Home Depot has breached the lease by refusing to reconstruct the improvements that were demolished after the fire. Rather than seeking specific performance however,

Julian Depot instead seeks a monetary award, claiming it "has been damaged in an amount equal to or greater than the value of the Improvements" before the fire in November 2013 plus "an amount based on 115% of the Annual Rent that Home Depot would owe [Julian Depot] through . . . 2046." (*Id.* at ¶ 90.)

## 2. Legal Standard

In challenging a Court's jurisdiction under Federal Rules of Civil Procedure 12(b)(1), based on ripeness, a court must determine whether it has been presented with a true case or controversy to adjudicate. *Moynihan v. W. Coast Life Ins., Co.*, 607 F. Supp. 2d 1336, 1338 (S.D. Fla. 2009) (Zloch, J.). "Article III of the United States Constitution limits the jurisdiction of the federal courts to cases and controversies of sufficient concreteness to evidence a ripeness for review." *Digital Properties, Inc. v. City of Plantation*, 121 F.3d 586, 589 (11th Cir. 1997) (citing U.S. Const. art. III, § 2, cl. 1). In evaluating ripeness, a court must consider: "(1) the fitness of the issues for judicial decision, and (2) the hardship to the parties of withholding court consideration." *Digital Properties*, 121 F.3d at 589. Ultimately, the resolution depends on "whether there is sufficient injury to meet Article III's requirement of a case or controversy and, if so, whether the claim is sufficiently mature, and the issues sufficiently defined and concrete, to permit effective decisionmaking by the court." *Cheffer v. Reno*, 55 F.3d 1517, 1524 (11th Cir. 1995).

A court considering a motion to dismiss, filed under Rule 12(b)(6), must accept all of the complaint's allegations as true, construing them in the light most favorable to the plaintiff. *Pielage v. McConnell*, 516 F.3d 1282, 1284 (11th Cir. 2008). Although a pleading need only contain a short and plain statement of the claim showing that the pleader is entitled to relief, a plaintiff must nevertheless articulate "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not shown—that the pleader is entitled to relief." *Ashcroft v. Iqubal*, 556 U.S. 662, 679 (2009) (quoting Fed. R. Civ. P. 8(a)(2)) (internal punctuation omitted). A court must dismiss a plaintiff's claims if she fails to nudge her "claims across the line from conceivable to plausible." *Twombly*, 550 U.S. at 570.

## 3. Declaratory Judgment Count

Home Depot submits that Julian Depot's declaratory-judgment count should be dismissed because Julian Depot has not presented an Article III case or controversy and instead merely seeks an advisory opinion. "At an irreducible minimum, the party who invokes the court's authority under Article III must

show: (1) that they personally have suffered some actual or threatened injury as a result of the alleged conduct of the defendant; (2) that the injury fairly can be traced to the challenged action; and (3) that it is likely to be redressed by a favorable decision." *U.S. Fire Ins. Co. v. Caulkins Indiantown Citrus Co.*, 931 F.2d 744, 747 (11th Cir. 1991). Under 28 U.S.C. § 2201, a declaratory judgment may only be issued in the case of an "actual controversy." To survive a motion to dismiss, the complaint must allege: (1) a substantial continuing controversy; (2) between parties having adverse legal interests. *Emory v. Peeler*, 756 F.2d 1547, 1552 (11th Cir. 1985). In order to establish that the controversy is continuing, "[t]he plaintiff must allege facts from which the continuation of the dispute may be reasonably inferred" which "may not be conjectural, hypothetical, or contingent." *Id.* The controversy "must be real and immediate, and create a definite, rather than speculative threat of future injury." *Id.* "The remote possibility that a future injury may happen is not sufficient to satisfy the 'actual controversy' requirement for declaratory judgments." *Id.*

Julian Depot insists that Home Depot must reconstruct the razed improvements at issue in this case. And it alleges in the complaint that Home Depot, in opposition, maintains that it is not required to do so. (Compl. at ¶ 68 ("Home Depot has indicated that it does not intend to reconstruct the Improvements, notwithstanding [Julian Depot's] demands that it do so."); ¶ 79 ("Home Depot contends that because Section 7.3 provides it has 'no obligation to construct any improvements on the Premises,' [Julian Depot] cannot require it to reconstruct the Improvements, pursuant to Sections 8.9(a)(i) and 10.1."); Letter from David E. Gurley to Marc Birnbaum (Jan. 23, 2017), Compl. Ex. G, ECF No. 1-2, 201 (Home Depot's counsel noting that "there is no obligation under the Lease for Home Depot" to reconstruct the improvements).) Further, Julian Depot asserts that, according to the lease, in the event Home Depot refuses to rebuild, Home Depot is required to continue paying Julian Depot rent, apparently forever. (*Id.* at ¶82.C. (asking that the Court declare that Home Depot is required to "continue to pay rent through all Option Terms and beyond them, in the event that it opts not to reconstruct the Improvements").) Conversely, the complaint alleges, Home Depot claims it need only pay rent until 2026, when the initial term of the lease expires. (*Id.* at ¶ 80.)

From these facts, the Court reasonably infers that there is indeed a substantial continuing controversy between the parties and that their legal interests are certainly adverse. Further, the threat of future injury to Julian Depot does not appear, based on Julian Depot's allegations, to be speculative. Julian Depot claims entitlement to possession of the improvements, at the termination of the lease, or a rent payment that is owed to it in perpetuity

should the improvements never be constructed. According to the complaint, Home Depot says that it refuses to build the improvements and will not pay rent beyond its initial term. While, in the end, Julian Depot's interpretation of the contract may prove to be in error, such an analysis is not properly before the Court at this stage of the litigation.

Home Depot's arguments to the contrary are unavailing. First, Home Depot argues that Julian Depot is not entitled to a declaratory judgment because Julian Depot has not alleged any conduct that could result in "imminent and inevitable" litigation unless these issues are resolved. Home Depot puts too fine a point on the word "imminent." According to the complaint, Home Depot maintains that it will not reconstruct the improvements and will cease paying rent in nine years, at the expiration of the lease's initial term. While it is true that the repercussions of Home Depot's ceasing to pay rent in nine years are not themselves imminent at this moment, the resulting litigation such a course of conduct will lead to is imminent in relation to the anticipated conduct. That is, should Home Depot act according to the factual allegations lodged in the complaint, the Court expects that litigation, at that point, will be both imminent and inevitable. *See Kelley v. E.I. DuPont de Nemours & Co.*, 17 F.3d 836, 845 (6th Cir. 1994) (noting that "it is not essential that the threatened injury be absolutely immediate and real" but rather "[t]he *potential for injury* need only be sufficiently immediate and real.") (quotations marks and alterations from original omitted) (emphasis added). Based on the complaint, the parties' controversy is, at this time, sufficiently definite and real that requiring Julian Depot to wait several more years before bringing its action would be arbitrary and merely delaying what appears to be inevitable litigation. *C.f. id.* at 844 (finding declaratory judgment properly entered even when future cleanup costs of toxic land site are acknowledged to be speculative). Ultimately then, Home Depot's motion to dismiss the declaratory judgment count under either Rule 12(b)(1) or 12(b)(6) is denied.

### 4. Breach-of-Contract Count

Home Depot argues that Julian Depot's breach of contract claim fails because it "alleges only a hypothetical future breach and speculative damages." (Def.'s Mot., ECF No. 13, 5.) To be sure, in order to properly plead a claim for breach of contract, a plaintiff must allege: (1) a valid contract; (2) a material breach; and (3) damages resulting from the breach. *Laterza v. JPMorgan Chase Bank, N.A.*, 221 F. Supp. 3d 1347, 1352 (S.D. Fla. 2016) (Rosenberg, J.) (quoting *Sulkin v. All Fla. Pain Mgmt., Inc.*, 932 So. 2d 485, 486 (Fla. 4th DCA 2006)).

With respect to damages, Julian Depot contends it has been damaged in an amount that is equal or greater than the value of the improvements that it says Home Depot is refusing to construct and in an amount based on 115% of the annual rent that Home Depot would owe through 2046. (Compl. at ¶ 90.)

Regarding the value of the building, however, even if Home Depot is required to construct such improvements, Julian Depot itself concedes, in its complaint, that the value of the improvements would not "ultimately pass to the Landlord" until "the end of the Lease." (*Id.* at 21.) That is, Julian Depot's own allegations admit that, based on the terms of the lease, title to any improvements will not "become vested in Landlord" until "the expiration or sooner termination" of the lease. (*Id.* at ¶ 23.) Since there is no allegation that the lease has either expired or terminated, the Court finds Julian Depot has not sufficiently pleaded its entitlement to an amount equal to the value of the improvements. Similarly, Julian Depot has not alleged that Home Depot has missed any rent payments and in fact acknowledges that, as of the filing of its complaint, Home Depot continues to comply with its payment obligations under the lease.

Because Julian Depot has not sufficiently alleged any damages, its breach-of-contract claim is dismissed. Further, because of the dismissal on this basis, the Court declines to evaluate whether Julian Depot has succeeded in asserting any actual breach or anticipatory breach.

5. **Conclusion**

In accordance with the above, the Court **grants in part and denies in part** Home Depot's motion to dismiss (**ECF No. 13**). The motion is denied with respect to count 1, for declaratory relief, and granted with respect to count 2, for breach of the ground lease. The Court also **denies** Julian Depot's motion to bifurcate and for expedited proceedings (**ECF No. 10**): because Julian Depot's breach of contract claim is dismissed, the Court denies Julian Depot's request for bifurcation as moot; further the Court finds fully expedited proceedings in this case unwarranted. However, the Court will enter a scheduling order that is a slightly abbreviated version of the Court's standard scheduling track since the issues in this case have been substantially narrowed.

**Done and ordered**, at Miami, Florida, on December 7, 2017.

Robert N. Scola, Jr.
United States District Judge