United States District Court
for the
Southern District of Florida

| | |
|---|---|
| Julian Depot Miami, LLC, Plaintiff, | ) |
| | ) |
| v. | ) Civil Action No. 17-22475-Civ-Scola |
| | ) |
| Home Depot U.S.A., Inc., | ) |
| Defendant. | ) |

## Omnibus Order

In this case Julian Depot Miami, LLC, Home Depot U.S.A.'s landlord, complains about Home Depot's refusal to rebuild its home-improvement store after it was damaged by a fire. Alleging that Home Depot is required by the parties' lease to reconstruct its building, which has been completely razed, Julian Depot seeks a declaratory judgment that Home Depot must rebuild its store.[1] Before the Court now are Julian Depot's (1) motion to transfer venue (**ECF No. 25**) and (2) motion for leave to amend its complaint (**ECF No. 35**). The Court **denies** both motions.

1. **Julian Depot has failed to establish that this case should be transferred to the District Court for the Southern District of New York.**

After its case against Home Depot had been pending for several months, Julian Depot, on October 23, 2017, filed a voluntary petition for bankruptcy under Chapter 11 in the Southern District of New York. Whether through removal under 28 U.S.C. § 1452 or by transfer by way of 28 U.S.C. § 1412, Julian Depot now requests that this case be transferred to that court.

To begin with, this case cannot be "removed," under § 1452, from this district court to another district court. Julian Depot ultimately concedes as much. And, if Julian Depot seriously intended to attempt removal, as provided for by § 1452, it would have simply removed this case by filing a notice as provided for in Federal Rule of Bankruptcy Procedure 9027 rather than filing its motion to transfer. But as Julian Depot itself notes, allowing removal of a case already in district court "would lead to the illogical result of a district court removing a case to itself and then referring the case to the bankruptcy court." (Pl.'s Mot. to Transfer at 7 (citing several cases that support this proposition).) Since Julian Depot does not take its attempted removal seriously, neither does the Court.

---

[1] In a prior order the Court dismissed Julian Depot's breach of contract claim. (ECF No. 19.)

Julian Depot's request to have its case transferred, on the other hand, warrants further examination. Under § 1412, "[a] district court may transfer a case or proceeding under title 11 [of the Bankruptcy Code] to a district court for another district, in the interest of justice or for the convenience of the parties." 28 U.S.C. § 1412. "The party seeking the change or transfer of venue has the burden to show that transfer is appropriate and further must do so by a preponderance of the evidence." *In re Harnischfeger Indus., Inc.*, 246 B.R. 421, 435 (Bankr. N.D. Ala. 2000). Julian Depot seeks transfer based on the first prong set forth in § 1412: in the interest of justice. (Pl.'s Mot. to Transfer at 10.) In its motion, Julian Depot contends that "the efficient administration of the bankruptcy estate requires that the instant litigation be transferred." (*Id.*)

The Court is not persuaded. Transferring this case, at this point in the litigation—over a year since it was initiated—would not promote its efficient resolution. Further, and more importantly, the parties here incorporated a forum-selection clause into their lease agreement. Julian Depot does not dispute that this clause, by it terms, requires the parties to litigate this case in Miami-Dade County. Instead, Julian Depot argues, for the first time in reply, that "special circumstances exist[] under which this Court can and should decline to enforce the forum clause in the interests of justice under 28 U.S.C. § 1412." (Pl.'s Reply at 2.)

Julian Depot's position hinges on its insistence that this case constitutes a "core proceeding" for the purposes of its bankruptcy case. According to Julian Depot, where a case constitutes a core bankruptcy proceeding, a court may disregard an otherwise valid forum-selection clause and transfer the case to another forum. This case, however, is not a core proceeding.

"Core proceedings are defined in 28 U.S.C. § 157(b)(1) as 'proceedings arising under title 11, or arising in a case under title 11.'" *In re Toledo*, 170 F.3d 1340, 1345 (11th Cir. 1999) (quoting 28 U.S.C. § 157(b)(1)). The Bankruptcy Code, further, provides a non-exclusive list of core proceedings. *See* 28 U.S.C. § 157(b)(1)(A)—(P). Without any analysis, Julian Depot submits that this case is a combination of the proceedings described in paragraphs (A), "matters concerning the administration of the estate," (M) "orders approving the use or lease of property, including the use of cash collateral," and (O), "other proceedings affecting the liquidation of the assets of the estate or the adjustment of the debtor-creditor . . . relationship." 28 U.S.C. § 157. The Court is not persuaded. This action, seeking a declaratory judgment with respect to certain terms of a land lease, does not, without more, fit one of the listed categories.

Since the list in § 157(b)(1) is not exclusive, this conclusion, as Julian Depot points out, does not, however, end the Court's inquiry. Rather, the Court

"must inquire as to the nature of a core versus a non-core proceeding." *In re Elec. Mach. Enterprises, Inc.*, 479 F.3d 791, 797 (11th Cir. 2007). As expounded upon by the Eleventh Circuit, "if the proceeding involves a right created by the federal bankruptcy law, it is a core proceeding." *Id.* (quotations and alterations omitted). Further, a "proceeding is also considered core if the proceeding is one that would arise only in bankruptcy." *Id.* (quotations and alterations omitted). Importantly, a "proceeding is not core if the proceeding does not invoke a substantive right created by the federal bankruptcy law and is one that could exist outside of bankruptcy." *Id.* (quotations and alterations omitted).

Julian Depot maintains that "the overwhelming importance of the outcome of this [a]ction to the bankruptcy proceeding turns what in other circumstances would be a non-core matter into a core proceeding." (Pl.'s Resp. to Sur-Reply, ECF No. 41-1, 3.)[2] The Court disagrees. Julian Depot has not pointed to any "substantive right" in this case that is "peculiar to the bankruptcy context." *In re Hemphill Bus Sales, Inc.*, 259 B.R. 865, 870 (Bankr. E.D. Tex. 2001). That is, this contractual dispute, dealing with whether or not Home Depot must rebuild its store on Julian Depot's land, does not implicate any right or public policies that arise only within bankruptcy law. *See Wortley v. Bakst*, 844 F.3d 1313, 1319–20 (11th Cir. 2017) (finding that a complaint that "only asserts state-law tort claims, which are not created by the Bankruptcy Code and are not particular to federal bankruptcy law" is not core); *c.f.*, *Hemphill*, 259 B.R. at 870 (finding a proceeding (involving a debtor-in-possession's assumption or rejection of an executory contract) core because it "involve[ed] both substantive rights and public policy that do not arise outside of bankruptcy law"). The Court's determination of Julian Depot and Home Depot's rights and obligations under the parties' lease "does not involve a right created by federal bankruptcy law, and it is not a proceeding that would arise only in bankruptcy." *Elec. Mach.*, 479 F.3d at 798; *see also Wortley*, 844 F.3d at 1319 ("In determining whether an action constitutes a core proceeding, the question is whether it stems from the bankruptcy itself or would necessarily be resolved in the claims allowance process.") (quotations and alterations omitted). Julian Depot has not established otherwise and the Court thus concludes that this proceeding is not core.

Since this matter is not core, the Court evaluates the parties' forum-selection clause with respect to Julian's Depot's motion to transfer. To begin with, "[f]orum selection clauses are presumptively valid and enforceable unless the plaintiff makes a strong showing that enforcement would be unfair or

---

[2] The Court grants Julian Depot's unopposed motion for leave to file a response to Home Depot's sur-reply (ECF No. 41) and has therefore considered the filing attached thereto.

unreasonable under the circumstances." *Krenkel v. Kerzner Int'l Hotels Ltd.*, 579 F.3d 1279, 1281 (11th Cir. 2009). A forum selection clause is unenforceable when: "(1) its formation was induced by fraud or overreaching; (2) the plaintiff would be deprived of its day in court because of inconvenience or unfairness; (3) the chosen law would deprive the plaintiff of a remedy; or (4) enforcement of the clause would contravene public policy." *Rucker v. Oasis Legal Fin.*, 632 F.3d 1231, 1236 (11th Cir. 2011) (quotations omitted). "In a 'non-core' proceeding in a bankruptcy case that presents a dispute that is purely a state law claim, a forum selection clause is enforceable to the same extent it is enforceable in a nonbankruptcy matter." *In re Hutcheson Med. Ctr., Inc.*, No. 14-42863-PWB, 2017 WL 4536076, at *6 (Bankr. N.D. Ga. Oct. 6, 2017) (citing *In re Exide Technologies*, 544 F.3d 196, 218 (3rd Cir. 2008)). Julian Depot has not made any argument that the forum-selection clause was induced by either fraud or overreaching. Additionally, Julian Depot has not indicated that it would in any way be deprived of its day in court if this case remains before the Court in this district. Next, Florida law will be applied regardless of whether this case remains in Florida or is transferred to a federal district court in New York. Lastly, enforcement of the forum-selection clause here will not contravene public policy: this matter is decidedly a non-core proceeding, and Julian Depot has not made any other public-policy argument. Without more, the Court finds the parties' forum-selection clause controls and denies Julian Depot's attempt to transfer this case to New York.

> **2. Julian Depot has not established good cause supporting modification of the Court's scheduling order and therefore Julian Depot may not amend its complaint.**

In a separate motion, Julian Depot seeks leave to amend its complaint. In support of the amendment, Julian Depot points to Federal Rule of Civil Procedure 15(a)(2) which provides "[t]he court should freely give leave" to amend "when justice so requires." When leave to amend, however, is sought after the deadline to amend the pleadings has passed, as it has in this case, the movant must do more than argue leave is due under Federal Rule of Civil Procedure 15(a). That is, the movant must also show "good cause" under Federal Rule of Civil Procedure 16(b) in order to obtain the right to amend. *See Sosa v. Air Print Sys., Inc.*, 133 F.3d 1417, 1418 (11th Cir. 1998); Fed. R. Civ. P. 16(b)(4) ("A schedule may be modified only for good cause and with the judge's consent."). The standard set forth in Rule 16(b) "precludes modification [of the scheduling order] unless the schedule cannot 'be met despite the diligence of the party seeking the extension.'" *See Sosa*, 133 F.3d at 1418 (quoting Fed. R. Civ. P. 16 advisory committee's note). Thus, "diligence is the

key to satisfying the good cause requirement." *De Varona v. Discount Auto Parts, LLC*, 285 F.R.D. 671, 672–73 (S.D. Fla. 2012) (Ungaro, J.). Only if "good cause" for an untimely amendment is shown under Rule 16(b), does Rule 15(a)'s instruction, that leave should be freely given when justice so requires, come into play. *See* Fed. R. Civ. P. 15(a)(2). While the standard under Rule 15(a) is lenient, still, "a motion to amend may be denied on numerous grounds such as undue delay, undue prejudice to the [opposing party], and futility of the amendment." *See Maynard v. Bd. of Regents*, 342 F.3d 1281, 1287 (11th Cir. 2003) (citations omitted).

Although it likely satisfies the Rule 15(a) standard, assuming its amendment is not futile, Julian Depot fails to present the good cause necessary to justify its delay in seeking to amend its complaint. In requesting to amend, Julian Depot seeks to add a breach-of-contract claim with respect to an insurance provision in the parties' lease. According to Julian Depot, that provision requires Home Depot to either maintain property insurance "in an amount representing not less than one hundred percent [] of the actual full replacement cost of all Improvements on the Premises" or to self-insure, essentially at that same level. (Prop. Am. Compl., Ex. A., Ground Lease ¶ 9.1, ECF No. 35-1, 45.)

The deadline set for the parties to amend the pleadings was December 15, 2017. In its attempt to establish good cause supporting a modification of this Court-imposed deadline, Julian Depot presents a number of arguments. First, it contends that it "did not become aware that Home Depot ha[d] opted to self-insure until after the deadline . . . had passed." (Pl.'s Mot. to Amend at ¶ 20.) Julian Depot also complains that delays in Home Depot's responses to discovery as well as Julian Depot's bankruptcy filing hampered its effort to discover Home Depot's self-insured status. Lastly, Julian Depot contends its bankruptcy filing and "the unique circumstances of the bankruptcy process itself provide good cause" for modifying the scheduling order as well. After careful review, the Court finds Julian Depot fails to establish the diligence necessary to satisfy the good-cause requirement.

To begin with, the lease provision regarding insurance requires Home Depot to either obtain a policy that covers one-hundred percent of the replacement cost of all improvements or to self-insure at that same level. Under this provision, if Home Depot elects to self-insure it is required to "indemnify, defend and hold Landlord harmless from and against any and all losses, claims, damages, costs and expenses incurred by Landlord that would have been covered had the insurance coverage referenced above been in place." (Ground Lease at ¶ 9.1(d).) As a starting point, common sense would seem to dictate that Julian Depot should have, immediately upon learning of the fire or

the razing of the premises, assessed Home Depot's insurance status. According to Julian Depot, under the lease, Home Depot had to either fully insure the premises or cover any losses itself that Julian Depot might sustain. To wait nearly nine months after filing its complaint in state court (which was over three years after the fire) to determine whether Home Depot complied with those provisions or not shows, in and of itself, a lack of diligence. That Home Depot may have, according to Julian Depot, misled Julian Depot initially, by saying that it intended to rebuild the store, does not shield Julian Depot from its failure to diligently pursue its claims. Certainly by the time Julian Depot filed suit in state court in May 2017 it was aware that this wasn't so.

Further, on October 20, 2017, nearly two months before the deadline to amend, Home Depot disclosed, in discovery responses, that "[t]here were no proceeds from any policy of insurance as a result of the [f]ire or any damage from the [f]ire," that "no claims have been made against any policy of insurance as a result of the [f]ire or any damage from the [f]ire," and that it had no documents evidencing its communications with an insurer or insurance adjuster. (Pl.'s Mot. to Amend at ¶ 24.) In the face of this information, Julian Depot's complaint that "Home Depot did not indicate either that it did not have any commercial property insurance in place or that it had self-insured," is unavailing. Home Depot's responses should have put Julian Depot on notice that there was an insurance issue sufficient to prompt them to either amend their complaint at that point or to immediately inquire further about the issue. Julian Depot's complaint that Home Depot's answers were not nuanced enough to allow it to discern that Home Depot had elected to self-insure, at least in part, misses the mark. The onus is not on Home Depot to outline any claims Julian Depot might have. Rather, the burden rests with Julian Depot to prosecute its own case diligently. *Southern Grouts & Mortars, Inc. v. 3M Co.*, 575 F.3d 1235, 1241, n. 3 (11th Cir. 2009) (lack of diligence finding triggered by "a [party's] failure to seek the information it needs to determine whether an amendment is in order"); *De Varona*, 285 F.R.D. at 672 (S.D. Fla. 2012) (Ungaro, J.) (citing *Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604, 609 (9th Cir. 1992) ("If [a] party was not diligent, the [good cause] inquiry should end."). The information was not undiscovered because Home Depot was actively concealing it; the information was not discovered because Julian Depot didn't actively seek it. If, after Home Depot's October 20 discovery production, Julian Depot was unable to clarify the issue, it had plenty of time to bring the issue to the Court's attention prior to the amendment deadline. Instead, Julian Depot waited well over three months before taking any action.

Julian Depot's intervening bankruptcy filing, on October 23, 2017, also fails to support a finding of good cause. Related to its bankruptcy filing, Julian

Depot points to the following as supporting a finding of good cause to modify the amendment deadline: (1) once Julian Depot filed for bankruptcy, its counsel became a creditor of its bankruptcy estate; (2) as a result of its bankruptcy filing, Julian Depot was required to get permission from the bankruptcy court to reengage its counsel to continue representation; and (3) to avoid incurring further debt, Julian Depot itself instructed its counsel to cease working on its case. The time to bring these issues to the Court's attention was in October, when Julian Depot filed for bankruptcy; not months later, long after the deadline has passed. Further, Julian Depot's complaints about needing the bankruptcy court's authorization to continue to engage counsel rings hollow. As Julian Depot itself acknowledges, despite not receiving the necessary permissions, its counsel has nonetheless "been performing legal services in the instant case[] to avoid delaying its resolution, if at all possible." (Pl.'s Mot. to Amend at 7, n. 3.) Julian Depot's own decision to sit on its rights in order to conserve its resources does not amount to a showing of reasonable diligence.

Julian Depot also informs that "it did not learn that Home Depot had opted to self-insure . . . until January 16, 2018." (Pl.'s Mot. to Amend at 7.) Even if the Court assumes this is true, it does not explain why Julian Depot then waited an additional three-and-a-half weeks even after that discovery to file its motion for leave to amend. Thus even after becoming fully aware of the purported issue, Julian Depot continued to drag its feet.

Finally, the Court is not persuaded by Julian Depot's reliance on *Auto-Owners Ins. Co. v. Ace Elec. Serv., Inc.*, for the proposition that the Eleventh Circuit "has never foreclosed the possibility that good cause can be demonstrated by facts external to the parties' conduct." 648 F. Supp. 2d 1371, 1377–78 (M.D. Fla. 2009). The Court does not find that case analogous to this one. In *Auto-Owners*, not only had the Court previously granted one of the parties leave to file the third-party complaint at issue, but the other parties in that case had also stipulated to the request to join the other party. *Id.* at 1377. Further, the complex "web of liability" attendant to construction litigation further motivated the *Auto-Owners* court to allow the belated joinder of a new party to the case. *Id.* at 1378. Here, allowing Julian Depot's amendment will only complicate, not simplify, this case, resulting in further delay.

In sum, after a thorough review of the record, the Court finds Julian Depot's lack of diligence precludes a modification of the scheduling order. *See Sosa*, 133 F.3d at 1418 ("This good cause standard precludes modification unless the schedule cannot be met despite the diligence of the party seeking the extension."). The Court therefore denies its motion for leave to amend its complaint.

### 3. Conclusion

The Court has carefully considered the issues raised in both Julian Depot's motion to transfer and motion for leave to amend its complaint. Based on the forum-selection clause incorporated into the parties' lease, the Court **denies** Julian Depot's motion to transfer this case (**ECF No. 25**). And because the Court finds Julian Depot has not established the good cause necessary to modify the Court's scheduling order, it also **denies** Julian Depot's motion for leave to amend its complaint (**ECF No. 35**).

**Done and ordered**, at Miami, Florida, on July 11, 2018.

_____
Robert N. Scola, Jr.
United States District Judge